# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ASOCIACION HOSPITAL DEL MAESTRO, INC., et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>ALEX M. AZAR II, Secretary, U.S. Department of Health and Human Services,<br><br>   Defendant. | Civil No. 17-2302 (ADC) |

## OPINION AND ORDER

Before the Court is a motion for summary judgment by plaintiff Asociación Hospital del Maestro, Inc., and twenty-four other plaintiffs ("the hospitals" or "plaintiffs"), **ECF No. 24**; a cross-motion for summary judgment by Alex M. Azar II, in his official capacity as Secretary of the United States Department of Health and Human Services ("the Secretary" or "defendant"), **ECF No. 29**; and multiple related filings, **ECF Nos. 13 to 21, 33 to 38, 40**. After thoroughly considering the parties' pleadings, motions, and the case's administrative record in light of applicable law, the Court **DENIES** plaintiffs' motion for summary judgment, **ECF No. 33**, and **GRANTS** the defendant's cross-motion for summary judgment, **ECF No. 35**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are acute-care hospitals in Puerto Rico which were paid under the Medicare inpatient prospective payment system ("IPPS") at all relevant times. **ECF No. 34** at 6. "Under [the] IPPS, Medicare payments for hospital operating costs are not based on the costs[, but]

[r]ather, . . . on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments." **ECF No. 33** at 16; *see* 42 U.S.C. § 1395ww(d). Among those adjustments is the "disproportionate share hospital" payment ("DSH payment"), which is the object of this case. **ECF No. 33** at 16-18; *see* 42 U.S.C. §§ 1395ww(d)(5)(F). DHS payments "are add-on adjustments made to hospitals that . . . compensate [them] for the increased costs that they incur serving a disproportionately large percentage of low income patients." **ECF No. 34** at 6; *see* 42 U.S.C. §1395ww(d)(5)(F)(i).

A DHS payment is based on an individual hospital's "disproportionate patient percentage" ("DPP"), as provided under 42 U.S.C. § 1395ww(d)(5)(F)(v)-(vi) ("Subparagraph (F)"). The DPP "is the sum of two fractions, expressed as percentages." *Memorial Hospital at Gulfport v. Sebelius*, 499 Fed. App'x. 393, 395 (5th Cir. 2012); *see* 42 U.S.C. § 1395ww(d)(5)(F)(vi). Those fractions "are designed to capture as a proxy the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year." **ECF No. 33** at 17; *see* 42 U.S.C. §§ 1395ww(d)(5)(F)(v)-(vi). The first fraction is "the Medicare/SSI [Supplemental Security Income[1]] fraction, [which] accounts for inpatients who are Medicare recipients [and] also entitled to SSI." **ECF No. 33** at 17; *see* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The second fraction is the "Medicaid fraction, [which]

---

[1] "The Supplemental Security Income (SSI) is a federal assistance program for aid to qualified aged, blind and disabled persons." *Califano v. Torres*, 435 U.S. 1, 2 (1978). It is not available to residents of Puerto Rico. *Id*.

accounts for inpatients who are not entitled to Medicare benefits, but who qualify for medical assistance under a [s]tate's Medicaid [s]tate plan."[2] **ECF No. 33** at 17; *see* 42 U.S.C. §1395ww(d)(5)(F)(vi)(II).

The IPPS did not apply to hospitals in Puerto Rico at first; island hospitals requested to be included in that payment system. **ECF No. 15** at 222, 262, 274. The Secretary submitted a report to the United States Congress ("the Secretary's Report") recommending that Puerto Rico be included in the IPPS with adjustments to account for local characteristics, including "comparatively low costs in Puerto Rico hospitals" in relation to the mainland United States. *Id.* at 222. Effective October 1, 1987, Puerto Rico hospitals were included in the IPPS. *See* 42 U.S.C. § 1395ww(d)(9); 52 Fed. Reg. 33034, 1987 WL 140642. The Health Care Financing Administration of the U.S. Health and Human Services ("HHS") issued a Final Rule explaining the statutory inclusion of Puerto Rico hospitals in the IPPS. 52 Fed. Reg. 33034, 1987 WL 140642. Among other provisions, the Final Rule contained a summary of the results of the notice and comment process underlying it and included a Subpart K to the Code of Federal Regulations titled, "Prospective Payment System for Inpatient Operating Costs for Hospitals Located in Puerto Rico," codified at 42 C.F.R. §§ 412.200-412.220. *Id*.

---

[2] "The Puerto Rico Medicaid delivery system is a subset of the larger public government healthcare delivery system for most of the island's population," available to persons who meet certain low-income and other eligibility requirements. https://www.medicaid.gov/state-overviews/puerto-rico.html (last visited on March 8, 2019).

Along with Puerto Rico's inclusion in the IPPS, Congress provided that participating hospitals in Puerto Rico were eligible for DSH payments, and said provision is the crux of the matter at hand. Specifically, as set forth in the statute,

> The following provisions of paragraph (5) shall apply to subsection (d) Puerto Rico hospitals receiving payment under this paragraph in the same manner and to the extent as they apply to subsection (d) hospitals[3] receiving payment under this subsection:
> . . . .
> (iii) Subparagraph (F),[4] except that for this purpose the sum described in clause (ii) of this subparagraph shall be substituted for the sum referred to in paragraph (5)(F)(ii)(I).

42 U.S.C. § 1395ww(d)(9)(D). Plaintiffs refer to this provision as "the Puerto Rico DSH Statute" in their motion for summary judgment. *See* **ECF Nos. 33, 37**; 42 C.F.R. § 412.200 (agency rule reiterating that Subparagraph (F) applies to Puerto Rico hospitals, among other statutory provisions). In order to obtain a DSH payment, a hospital is required to submit an annual cost report to a designated Medicare Administrative Contractor ("MAC"), who in turn reviews the hospital's report and issues a Notice of Amount of Program Reimbursement ("NPR"). If dissatisfied with an NPR, a hospital may file an appeal before the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395*oo*. The PRRB's decisions are deemed final administrative actions unless reversed, affirmed, or modified by the Secretary. *See* 42 U.S.C.

---

[3] "Subsection (d) hospitals[ ] . . . are hospitals that are paid under the hospital inpatient prospective payment system (IPPS) and are located in one of the 50 states or the District of Columbia." https://www.cms.gov/regulations-and-guidance/legislation/ehrincentiveprograms/downloads/mln_tipsheet_medicarehospitals.pdf (last visited on March 8, 2019).

[4] As summarized above, 42 U.S.C. § 1395ww(d)(5)(F) ("Subparagraph (F)") contains the rules of DHS payment calculations based on the sum of the Medicare/SSI fraction and the Medicaid fraction.

§ 1395*oo*(f)(1); 42 C.F.R. §§ 405.1875, 405.1877. The Secretary delegated the Medicare program's administration to the Center for Medicare and Medicaid Services ("CMS"), and the PRRB lacks the authority to adjudicate the validity of the Secretary's regulations and of his rulings via the CMS. *See* 42 C.F.R. § 405.1867. As such, if the PRRB determines that the legal issues raised are outside the scope of its authority, it must certify the case for expedited judicial review ("EJR"). *See* 42 U.S.C. §1395*oo*(f)(1); 42 C.F.R. § 405.1842.

In the instant case, plaintiffs filed an administrative appeal before the PRRB challenging DSH payments corresponding to various time periods between fiscal years 1999 and 2006. *See* **ECF No. 1** at 12. The PRRB held a hearing and granted EJR, holding that there were no findings of fact for resolution by the PRRB and that it lacked authority to adjudicate the substantive question at hand. *Id*. at 12, 13. In support of their motion for summary judgment, plaintiffs aver that

> The Hospitals' DSH payments are unlawful and should be set aside because the Secretary's failure to count any low-income Puerto Rico resident Medicare beneficiaries for DSH purposes is inconsistent with the plain meaning of the Puerto Rico DSH Statute (and other provisions of the Medicare Act). Even if this Court were to find that the Puerto Rico DSH Statute is ambiguous (which it is not), the Secretary's implementation is unreasonable. This is because (1) the purpose of the DSH payment is to compensate hospitals for the higher costs of treating low-income patients, (2) Puerto Rico hospitals indisputably treat low-income Medicare beneficiary Puerto Rico residents but (3) that care is not taken into account by the Secretary when calculating DSH payments for Puerto Rico hospitals. Moreover, the Secretary's implementation is not entitled to deference because the Secretary has taken the position that the implementation is required by statute and, thus, the Secretary has not exercised his own judgment when interpreting the Puerto Rico DSH Statute, nor has the Secretary otherwise explained his unlawful actions. Even if the Secretary's implementation were found to be reasonable (which it is not), it

> cannot be applied because it is procedurally defective under the Medicare Act, the [Administrative Procedures Act ("APA")], and other authorities because the Secretary has not adopted the interpretation reflected in the implementation through notice-and-comment rulemaking, as required by the APA and the Medicare Act. The Hospitals' DSH payments also are unlawful and should be set aside because the Secretary's implementation of the Puerto Rico DSH Statute unconstitutionally deprives Puerto Rico residents and the Hospitals of equal protection under the laws.

**ECF No. 33** at 25-26; *see also* **ECF Nos. 34, 37, 38**. Conversely, defendant contends, in essence, that: (i) the Secretary's interpretation of the statutory provision in question was correct, in accordance with the plain meaning of its clear and unambiguous text, the statute as a whole, and its legislative history; (ii) the Secretary's interpretation is clearly stated in agency regulations consistent with the statute's plain language; (iii) plaintiffs' claim of procedural defects under the APA is meritless; and (iv) plaintiffs' claim of violation of equal protection rights is meritless. *See* **ECF Nos. 35**, **36**, **40**.

## II. STANDARD OF REVIEW

As held in this District,

> Judicial review of plaintiffs' challenge to the substantive validity of regulations [and interpretive decisions by administrative agencies] . . . is limited to the standards set forth by the Administrative Procedures Act, 5 U.S.C. § 551 *et seq.* ("APA"). Under the APA, a reviewing court may set aside an administrative decision only if that decision is beyond the agency's statutory authority or is "arbitrary, capricious, an abuse of discretion or not otherwise in accordance with the law." 5 U.S.C. § 706(2)(A), (C); *Natural Resources Defense Council v. United States Environmental Protection Agency*, 824 F.2d 1258, 1267 (1st Cir. 1987). Under this standard, the scope of review is narrow. The court's task is to determine only whether the agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Manuf.*

*Ass'n. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983).

*Hosp. San Rafael, Inc. v. Sullivan*, 784 F. Supp. 927, 933 (D.P.R. 1991).

Generally, a case of this nature shall be decided solely on the administrative record, although it may be "supplemented, if necessary, by affidavits, depositions, or other proof of an explanatory nature." *Sierra Club v. Marsh*, 976 F.2d 763, 772 (1st Cir. 1992); *see Boston Redevelopment Authority v. National Park Service*, 838 F.3d 42, 48 (1st Cir. 2016). Moreover, insofar as plaintiffs in this case seek judicial review of an administrative decision, "the usual rules that describe how the [C]ourt must construe the summary judgment record do not apply. Instead, the entire case on review is a question of law." *Sig Sauer, Inc. v. Jones*, 133 F. Supp. 3d 364, 369 (D.N.H. 2015), *aff'd sub nom. Sig Sauer, Inc. v. Brandon*, 826 F.3d 598 (1st Cir. 2016) (internal citations and quotation marks omitted) (citing *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). In that respect, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Gentiva Healthcare Corp. v. Sebelius*, 857 F. Supp.2d 1, 6 (D.D.C. 2012), *aff'd* 723 F.3d 292 (D.C. Cir. 2013).

Furthermore, in reviewing the Secretary's legal interpretation in question here, the Court applies the two-part analysis under *Chevron v. U.S.A., Inc. v. Natura. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("*Chevron*"). *See Pérez-Olivo v. Chávez*, 394 F.3d 45, 48 (1st Cir. 2005). Under the first prong, "employing traditional tools of statutory construction, [we must] ascertain[ ]

[whether] Congress had an intention on the precise question at issue. If the answer to this inquiry is yes, then that intention is the law and must be given effect." *Id.* (citations and internal quotation marks omitted). Under the second prong, if "the statute is silent or ambiguous with respect to the specific issue, the question for the [C]ourt is whether the agency's answer is based on a permissible construction of the statute." *Id.* "If so, we defer to an agency's interpretive regulation unless it is arbitrary, capricious, or manifestly contrary to the statute." *Santana v. Holder*, 731 F.3d 50, 55 (1st Cir. 2013) (citations and internal quotation marks omitted). The Court engages in the second prong of analysis under *Chevron* "only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." *Id*. To evaluate an agency's interpretation under the second prong, the Court may consider various factors, including the context in which the provision in question is used in the statute as a whole and its legislative history. *See Pérez-Olivo*, 394 F.3d at 49-52.

## III. DISCUSSION

### A. *Chevron* Analysis

**(i) The Secretary's Interpretation is in Accordance with the Plain and Unambiguous Meaning of the Statutory Provision in Question.**

As stated by defendant, "[t]his case presents a straightforward question of statutory interpretation: whether the Medicare statute requires the DSH-payment formula that applies to [hospitals in the 50 states and the District of Columbia] to be applied as enacted to Puerto Rico hospitals." **ECF No. 35** at 15. According to plaintiffs, the Secretary erred in giving a literal

interpretation to the phrase "in the same manner and to the extent as they apply to subsection (d) hospitals" in the statute's DSH-payment provisions applicable to Puerto Rico hospitals, specifically regarding the Medicare/SSI fraction of the DSH payment. *See* 42 U.S.C. §1395ww(d)(9)(D); *see also* **ECF Nos. 33, 37**. In plaintiffs' reading of the statutory extension of IPPS and DSH payments to Puerto Rico, "Congress required CMS to provide special treatment made for hospitals in Puerto Rico." **ECF No. 14-1** at 1010; *see* **ECF No. 33** at 29-40. Specifically, plaintiffs contend that under the plain meaning of the statutory provision in question, "[t]his Court should interpret the Puerto Rico DSH Statute to require the Secretary to calculate the DSH payment for the [h]ospitals by including inpatient days related to Puerto Rico resident Medicare beneficiary patients who met (except for the residency in a State) the SSI criteria (or some other reasonable low-income proxy)." **ECF No. 33** at 33-34.

Pursuant to *Chevron*, "[w]e begin with the actual language of the statute, and ask whether the phrase[--'in the same manner and to the extent as'--]has a plain and unambiguous meaning with regard to the particular dispute in this case." *Pérez-Olivo*, 394 F.3d at 49. "[T]his requires beginning with a textualist approach, as the 'plain meaning' of statutory language controls its construction." *Flock v. U.S. Dept. of Transp.*, 840 F.3d 49, 55 (1st Cir. 2016) (quoting *Summit Inv. & Dev. Corp. v. Leroux*, 69 F.3d 608, 610 (1st Cir. 1995)).

In ascertaining the plain meaning of the phrase in question in this case, the Court notes that the statute does not include definitions of the pertinent terms, for which "we can look at the dictionary for clarification of the plain meaning of the words selected by Congress." *See Pérez-*

*Olivo*, 394 F.3d at 49; *see also United States v. Lachman*, 387 F.3d 42, 50 (1st Cir. 2004). According to the Merriam-Webster Dictionary: (i) "same" means "resembling in every relevant respect," "identical," "corresponding so closely as to be indistinguishable," and "equal in size, shape, value, or importance;"[5] (ii) "manner" means "method, mode [ ], way, fashion, [and] system;"[6] and (iii) "extent" means "scope" and "the point, degree, or limit to which something extends."[7] Thus, as correctly asserted by defendant, "the plain language of the statute requires those provisions relating to DSH payments to apply to Puerto Rico hospitals just as—that is, in an identical way and to the degree as—they apply to hospitals in the fifty states and the District of Columbia." **ECF No. 35** at 18.

Accordingly, under the clear language of the statute, when calculating the Medicare/SSI fraction under Subparagraph (F) for DSH payments to Puerto Rico hospitals, only patients who are entitled to SSI may be counted, just as said fraction is calculated for the DSH payments to hospitals in the 50 states and the District of Columbia. *See Sebelius*, 499 Fed. App'x. at 396 (affirming a district court decision, pursuant to *Chevron* analysis, that "Congress had directly spoken" in the plain, unambiguous language of 42 U.S.C. § 1395ww(d)(5)(F)(vi) that patients who are not entitled to SSI shall not be counted in the Medicare/SSI fraction); *Bayside Medical Center v. Leavitt*, 545 F. Supp.2d 20, 36-37 (D.D.C. 2008) (the text, structure and legislative history of Subparagraph (F) "leads the Court to the inescapable conclusion that Congress did not intend

---

[5] https://www.merriam-webster.com/dictionary/same (last visited on March 8, 2019).
[6] https://www.merriam-webster.com/dictionary/manner (last visited on March 8, 2019).
[7] https://www.merriam-webster.com/dictionary/extent (last visited on March 8, 2019).

that patients ineligible for SSI payments would be counted" in the Medicare/SSI fraction).[8] As correctly asserted by the Secretary in the instant case,

> Nowhere does the statute require an "accommodation" or "special treatment" for Puerto Rico hospitals in relation to DSH payments. Nor does the statute say that DSH payments must be "available" to the same extent as they are available to the States to ensure that the payments are "co-extensive" or equal in size. Regardless of what the actual payments turn out to be, Congress explicitly stated that the provisions of [42 U.S.C. § 1395ww(d)(5)(F)] relating to DSH payments—including the Medicare/SSI fraction—shall apply to Puerto Rico hospitals "in the same manner and to the extent as" they apply to hospitals in the States. 42 U.S.C. § 1395ww(d)(9)(D). Therefore, it is the DSH provisions (*i.e.*, the formula), and not the payments, that apply in the same manner and extent to all IPPS hospitals.

**ECF No. 35** at 21.

In short, the Court holds that the plain language of the statutory provision in question, standing alone, supports the Secretary's application of DSH payments in Puerto Rico as it pertains to the Medicare/SSI fraction calculation being challenged in the instant case. That in itself is dispositive of this matter, for which the Court need not proceed to the second prong of the analysis under *Chevron*. *See Santana*, 731 F.3d at 55. "'Courts must presume that a legislature says in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last; judicial inquiry is complete.'" *Sebelius*, 499 Fed. App'x. at 396 (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-62 (2002)). Nonetheless, in an abundance of caution, the Court proceeds to the second prong of *Chevron*.

---

[8] *See also* the administrative decisions cited by the Secretary at **ECF No. 35** at 23 n.10, which the Court wholly incorporates by reference.

**(ii) The Secretary's Interpretation is Based on a Reasonable Construction of the Statute, for Which it is Entitled to Controlling Deference.**

Even if the statutory provision in question were found to be ambiguous, its analysis in the context of the statute as a whole and the legislative history establish that the Secretary's interpretation is reasonable and warrants the Court's deference. "Judicial deference to reasonable interpretations by an agency of a statute that it administers is a dominant, well-settled principle of federal law." *Natl. R.R. Passenger Corp. v. Boston and Maine Corp.*, 503 U.S. 407, 417 (1992); *see Chevron*, 467 U.S. at 843. Moreover, "[d]eference is particularly appropriate in an area that is as complex as the field of Medicare reimbursement. In such an area [m]atters of accounting, unless they be the expression of a whim rather than an exercise of judgment, are for the agency." *La Casa del Convalesciente v. Sullivan*, 965 F.2d 1175, 1178 (1st Cir. 1992) (internal quotation marks omitted) (citing *Hospital San Jorge v. Secretary of Health, Education & Welfare*, 616 F.2d 580, 589 (1st Cir. 1980)).

    **(a)**     **Statute as a Whole**

For this part of the analysis, the Court examines 42 U.S.C. § 1395ww(d), which provides for inpatient service payments under the IPPS. That statute establishes that some aspects of the IPPS for inpatient services apply to Puerto Rico, others do not apply, and others are subject to special rules. *See* 42 U.S.C. § 1395ww(d)(9). Specifically, the statute:

(i)     provides Diagnostic Related Group ("DRG") payment rates which apply uniquely to Puerto Rico (Section 1395ww(d)(9)(A)--(C), (E));

    (ii)    includes Puerto Rico under certain provisions of 42 U.S.C. § 1395ww(d)(5) (specifically, Subparagraphs (A) (outlier payments); (B) (indirect medical education costs); (F) (DHS payments); and (H) (exceptions and adjustments)); and

    (iii)    excludes Puerto Rico from the applicability of other provisions of 42 U.S.C. § 1395ww(d)(5) (specifically, Subparagraphs (C) and (D) (referral centers and sole community hospitals)).

As such, the statute as a whole supports the Secretary's contention that

> Congress knew how to, and in fact did, explicitly exclude Puerto Rico hospitals from specific provisions that apply to hospitals in the fifty states and the District of Columbia. Yet Congress never specified that Puerto Rico hospitals must be excluded from, or accommodated with respect to, [S]ubparagraph [(F)]'s clear mandate that the Secretary count the number of days of patients entitled to SSI benefits when calculating DSH payments for all IPPS hospitals. Because Congress "explicitly enumerate[d] certain exceptions" to the general rule that paragraph (d)(5) provisions apply to Puerto Rico hospitals, the "additional exception[ ]" in Plaintiffs' reimagined statute should not be implied.

**ECF No. 35** at 25 (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.") (internal citations and quotation marks omitted)). "The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2000). In this case, the provisions legislated for Puerto Rico in its inclusion in the IPPS and DSH payments did not entail a special way to calculate the Medicare/SSI fraction Subparagraph (F), contrary to what plaintiffs averred.

**(b)   Legislative History and Intent**

As summarized above, the Secretary submitted a report to the United States Congress ("Congressional Report") recommending that Puerto Rico be included in the IPPS, with adjustments.[9] **ECF No. 15** at 219-223. Specifically, the Secretary recommended that

> [A] prospective payment rate be established for Puerto Rico hospitals based on a blend of 25 percent national federal standardized rate and 75 percent standardized rate for Puerto Rico. We believe a blended payment rate is appropriate since it provides a level of payment which gives recognition to the fact that the Puerto Rico hospital industry has already instituted cost cutting measures as evidenced by the lower growth rate in hospital costs when compared to the U.S. We also recommend that the urban/rural classification be eliminated for Puerto Rico hospitals since hospital cost levels are uniformly distributed across all areas of Puerto Rico, and that overall standardized rates which combine urban and rural areas be applied to Puerto Rico hospitals. Our proposal would, in effect, group Puerto Rico hospitals into a separate census region for purposes of establishing a standardized payment rate.

**ECF No 15** at 222-223. In light of the above, the Court agrees with defendant that "[t]he fact that the statute at issue was the result of the Secretary's Report, which did not contain [p]laintiffs' requested modification to the [DSH] payment formula, weighs heavily in favor of the Secretary's reading of the statute." **ECF No. 35** at 29.

---

[9] As stated by the Hospitals,

> When commenting on H.R. 5300, which included the Puerto Rico DSH Statute . . . , Senator [Daniel Patrick] Moynihan made the following statement: "The reconciliation bill also provides for the inclusion of Puerto Rico into the prospective payment system for hospitals. This legislation is a result of a report required by the Finance Committee in the Social Security Amendments Act of 1983. That report was finally signed by Secretary [of Health and Human Services Otis R. Bowen this summer with recommendations as to how Puerto Rico would enter the PPS."

**ECF No. 33** at 34 (quoting 132 Cong. Rec. S16957-01, 1986 WL 788982).

Plaintiffs point to the testimony of Jeffrey Farrow ("Farrow"), who appeared before the PRRB in the August 31, 2016 hearing that it held in this case. **ECF No. 33** at 34-36. According to plaintiffs, Farrow had been Staff Director of the U.S House of Representatives Subcommittee on Territories when the statute in question was being considered in 1986. *Id*. He testified in the aforementioned administrative hearing that he did not recall "any discussion at that time about limiting DSH payments to Puerto Rico hospitals," and he deemed that "there would have been vigorous discussion about any intent to discriminate against Puerto Rico in this way." **ECF No. 33** at 35 (internal quotation marks omitted) (citing Farrow's hearing testimony at **ECF No. 14-1** at 300-302). The Court deems that Farrow's testimony has little probative value insofar as it is proffered to establish that he did not recall the current language of the statute being discussed because if proposed at the legislative session it would have generated debate. As correctly asserted by the Secretary, "'judicial reliance on legislative materials . . . which are not themselves subject to the requirements of Article I, may give unrepresentative committee members[,] . . . unelected staffers[,] and lobbyists . . . the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text.'" **ECF No. 35** at 28 n.12. (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005)).

Furthermore, plaintiff contends that the Secretary's interpretation of the provision in question "turns the clear intent of the [s]tatute on its head" because the purpose of the same is to compensate hospitals for treating a high number of low-income patients, while the Secretary's

interpretation has the effect of precluding DSH payments to Puerto Rico hospitals. **ECF No. 33** at 37. The Court finds this characterization to be overstated. While the Court "is sympathetic to the hospitals' argument [as to the] class of patients [that] should be included in the disproportionate share calculation"[10] that was applied to the DSH payments being challenged,[11] Congress never intended for DSH payments to cover all low-income patients either in the states or in Puerto Rico, but rather the ones who are eligible under clearly established requirements contained in the statute. *See Leavitt*, 545 F. Supp.2d at 36-37 (analyzing 42 U.S.C. §1395ww(d)(5)(F)(vi)(I), Section 1619(b) of the Social Security Act, and their legislative histories). Moreover, it is well established that Congress is constitutionally able to treat Puerto Rico differently than it does states of the Union "if there is a rational basis for doing so" which may entail excluding Puerto Rico from benefits programs and/or offering reduced benefits to Puerto Rico residents. *Hosp. San Rafael, Inc.*, 784 F. Supp. at 940 (citing *Harris v. Rosario*, 446 U.S. 651, 651-652 (1980)); *see Califano v. Torres*, 435 U.S. 1, 2 (1978).

Additionally, while the Medicare/SSI fraction under 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) is unfavorable to Puerto Rico hospitals due to the local residents' ineligibility to SSI, plaintiffs' argument omits the other half of the formula under 42 U.S.C. § 1395ww(d)(5)(F)(vi)—the

---

[10] *Memorial Hospital at Gulfport v. Sebelius*, 499 Fed. App'x. 393, 398 (5th Cir. 2012) (affirming a district court's holding that the plain language of the statute did not allow for the inclusion of non-SSI qualifying Medicare patients in DSH payment calculations).

[11] As summarized above, **the payments being challenged correspond to the period from 1999 to 2006**. Moreover, as indicated by plaintiffs in their motion for summary judgment, starting in 2014, Congress amended the DSH payment calculations in a more favorable way to Puerto Rico hospitals, whereby only 25% of the payment is calculated using the DSH payment formula under 42 U.S.C. § 1395ww(d)(5)(F) that is the object of this case. *See* **ECF No. 33** at 22-24; *see* 42 U.S.C. § 1395ww(r)(1).

Medicaid fraction. Puerto Rico residents are eligible for Medicaid and, as averred by plaintiffs, "the population of Puerto Rico ranks significantly lower than any [s]tate with regard to average resident income and median household income." **ECF No. 33** at 30; *see* https://www.medicaid.gov/state-overviews/puerto-rico.html. As such, given that eligibility to Medicaid is based on meeting low-income requirements, a Puerto Rico hospital may be eligible to DSH payments if it reaches the necessary disproportionate payment percentage by treating a sufficient number of Medicaid patients. *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi).

**B.  The Hospitals' Claim of the Secretary's Non-Compliance with the Administrative Procedure Act Lacks Merit.**

Plaintiffs incorrectly contend that the Secretary's interpretation in question "could not be applied to the fiscal periods at issue here [1999 to 2006] because the Secretary has not adopted interpretation through notice-and-comment rulemaking, as required by the APA." **ECF No. 33** at 40. As summarized above, the HHS issued a Final Rule regarding the statutory inclusion of Puerto Rican hospitals in the IPPS. 52 Fed. Reg. 33034, 1987 WL 140642. The Final Rule contains a summary of the results of the notice and comment process in compliance with the APA and a Subpart K to the Code of Federal Regulations titled, "Prospective Payment System for Inpatient Operating Costs for Hospitals Located in Puerto Rico," among other provisions. *See id.*; 42 C.F.R. §§ 412.200-412.220.

In their opposition to defendant's motion for summary judgment, plaintiffs acknowledge the aforementioned Final Rule and the corresponding sections of the Code of Federal

Regulations. **ECF No. 37** at 14-15. Nonetheless, they contend that the Secretary "has never explained in a notice-and-comment rule or otherwise why his implementation of the Puerto Rico DSH Statute is reasonable," particularly his interpretation of the phrase "in the same manner and to the extent as" in 42 U.S.C. § 1395ww(d)(9)(D), whereby low-income Medicare patients in Puerto Rico are not counted for the Medicare/SSI fraction. *Id*. However, as correctly argued by the Secretary,

> The fact that the words "in the same manner and to the extent as" are not specifically defined in the regulation is of no moment to the question of whether the Secretary's regulation is entitled to *Chevron* deference. The regulation makes it unambiguously clear that DSH payments to Puerto Rico hospitals are to be calculated in the same way as they are calculated for other hospitals. That alone is enough for purposes of *Chevron* deference, as it is well-established that an agency's implicit interpretation is sufficient. *See, e.g., Nat'l R.R. Passenger Corp. v. Bos. & Me. Corp.*, 503 U.S. 407, 420 (1992) (holding that agency's implicit interpretation of the term "required" was entitled to deference); *Sherley v. Sebelius*, 644 F.3d 388, 396 (D.C. Cir. 2011) (holding that the agency's implicit interpretation of the term "reason" warranted *Chevron* deference).

**ECF No. 35** at 34-35.

### C. The Hospitals' Equal Protection Rights Claim Lacks Merit.

Plaintiffs argue that Puerto Rico residents pay full Social Security and Medicare taxes in the same way as residents of the States. **ECF No. 37** at 32 (citing *Consejo de Salud Playa de Ponce v. Rullán*, 586 F. Supp.2d 22, 38 (D.P.R. 2008)). They further contend to have standing to assert the rights of their patients, whose constitutional equal protection rights are being violated allegedly by the Secretary's interpretation of the statutory provision in question because it results in lower payments, thus unlawfully discriminating against Puerto Rico hospitals and

patients. **ECF No. 33** at 41-43. Subsequently, in their opposition to defendant's motion for summary judgment, plaintiffs allege for the first time--without any submission of evidence in support--that the basis of their claim of discrimination under the Equal Protection Clause is the predominantly Hispanic origin of their staff, and because Puerto Rico is a "predominantly Hispanic territory." **ECF No. 37** at 34-35. Plaintiffs' claim in this respect is meritless.

Inasmuch as the statute being challenged is one "providing for governmental payments of monetary benefits[,] [s]uch a statute is entitled to a strong presumption of constitutionality. So long as the judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket." *Califano*, 435 U.S. at 5. As discussed above, the Secretary's interpretation in question is not only rational, but in accordance with the plain meaning of the statutory language in question, the statute as a whole, and its legislative history. As such, plaintiffs' Equal Protection rights claim lacks in factual and legal basis.

Furthermore, "the receipt of a Medicare reimbursement is not a fundamental right guaranteed by the Constitution." *Hosp. San Rafael, Inc.*, 784 F. Supp. at 939 (citing *Whitney v. Heckler*, 780 F.2d 963, 972 (11th Cir. 1986)); *see Adams Nursing Home v. Matthews*, 548 F.2d 1077, 1082 (1st Cir. 1986). And although Hispanics constitute a protected class under federal anti-discrimination provisions, plaintiffs' allegation of Hispanic-origin discrimination, which was raised for the first time at the summary-judgment stage of the case, is tardy. *See Hosp. San Rafael, Inc.*, 784 F. Supp. at 939 (citing *Keyes v. School District No. 1*, 413 U.S. 189, 197 (1973); *U.S. v.*

*Mountzoures*, 376 F. Supp. 2d 13, 19 (D. Mass. 2005)). "It is well-settled that plaintiffs are generally not permitted to raise brand new theories of their case in opposition to a motion for summary judgment." *Mountzoures*, 376 F. Supp. 2d at 19 (internal quotation marks omitted) (citing *Agri-Mark, Inc. v. Niro, Inc.*, 233 F. Supp.2d 200, 207 (D. Mass. 2002)). Finally, even if plaintiffs' Equal Protection rights claim was properly raised, the record is devoid of any indication of the fundamental requirement to sustain such a claim—"'[p]roof of racially discriminatory intent or purpose.'" *Hosp. San Rafael, Inc.*, 784 F. Supp. at 940 (quoting *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265 (1977)).

## IV. CONCLUSION

For the reasons discussed above; (i) plaintiffs Asociación Hospital del Maestro, Inc., et al.'s motion for summary judgment, **ECF No. 24**, is hereby **DENIED**; and (ii) defendant Alex M. Azar II, in his official capacity as Secretary of the United States Department of Health and Human Services' cross-motion for summary judgment, **ECF No. 29,** is hereby **GRANTED**.

The Clerk of the Court shall enter judgment dismissing the instant case with prejudice.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 29th day of March, 2019.

                                                        **S/AIDA M. DELGADO-COLÓN**
                                                        **United States District Judge**